# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **POST BROTHERS HOLDINGS, LLC,**<br>1021 North Hancock Street, Suite 1<br>Philadelphia, PA 19123<br><br>Plaintiff,<br><br>v.<br><br>**AFFILIATED FM INSURANCE COMPANY,**<br>300 Kimball Drive, Suite 200<br>Parsippany, NJ 07054<br><br>Defendant. | CIVIL ACTION NO. |

## COMPLAINT

Plaintiff Post Brothers Holdings, LLC ("Post Bros."), by and through its undersigned counsel, complain and allege as follows:

### Nature of Action

1. This action involves a dispute concerning coverage under an "all risk" policy of property insurance issued by Defendant Affiliated FM Insurance Company ("AFM"), Policy No. 1117008 (the "Policy"). (*See* Policy (attached as Exhibit "A").)

1

2. The insurance policy covers a property owned by Post Bros. and located at 7601 River Road, North Bergen, NJ 07047 (the "Property").

3. On September 25, 2023, November 23, 2023, and December 11, 2023, the Property sustained damage and loss when rocks and debris fell from an eroding rock wall located on the Property, damaging, among other things, Post Bros.'s building, retaining wall, and chain link fence.

4. The dispute here concerns several terms in the Policy, including "temporary," "permanent," "real property," and "land."

5. Specifically, the parties dispute whether the rock wall on the Property is "real property," which is property covered by the policy. Or "land," which the policy purports to exclude. Neither the term "real property" nor "land" is defined in the Policy.

6. The parties also dispute whether certain protective measures to be taken regarding the rock wall are "temporary" or "permanent." If they are "temporary," then the Policy provides coverage, regardless of whether the rock wall constitutes "real property"

or "land." Neither the term "temporary" nor "permanent" is defined in the Policy.

7.  As explained below, AFM has taken (and maintains) arbitrary and unreasonable positions regarding the aforementioned terms, which AFM refuses to define.

8.  In this legal action, Post Bros. seeks: (1) a declaration of coverage under the Policy; (2) recovery for breach of contract due to failure to pay amounts due under the Policy; and (3) recovery for bad faith.

## The Parties

9.  Post Bros. is a limited liability company with an office located at 1021 North Hancock Street, Suite 1, Philadelphia, PA 19123.

10. Post Bros. has two members, Michael Pestronk and Matthew Pestronk, each of whom is domiciled in Pennsylvania.

11. AFM is an insurance company formed under the laws of Rhode Island with a principal place of business located at 300 Kimball Drive, Suite 200, Parsippany, NJ 07054.

12. For purposes of diversity jurisdiction, Post Bros. is a citizen of Pennsylvania, and AFM is a citizen of New Jersey and Rhode Island.

13. Accordingly, there is complete diversity between Post Bros. and AFM.

## Jurisdiction and Venue

14. This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332, based on diversity of citizenship and because the amount in controversy exceeds $75,000.00.

15. As alleged below, Post Bros. seeks monetary damages in excess of $3,000,000, which substantially exceeds the applicable jurisdictional threshold.

16. This Court has personal jurisdiction over AFM because AFM regularly conducts business in New Jersey.

17. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because the real property at issue is situate in this District, which is also where the dispute arose.

## Factual Background

18. AFM issued the Policy to Post Bros. on July 13, 2023. (Ex. "A" (Policy), Declarations Page.)

19. The Policy covered the term from June 30, 2023 to June 30, 2024. (*Id.*)

20. The Policy "covers property, as described in this Policy, against ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded, while located as described in this Policy." (*Id.* at 1 of 42.)

21. The Policy states as follows:

> The Policy insures the following property, unless otherwise excluded elsewhere in this Policy, at or within 1,000 feet of a **described location**, to the extent of the interest of the Insured in such property.
>
> 1. Real Property in which the Insured has an insurable interest.
>
> ***

*Id.* (emphasis in original).

22. Among the risks covered by the Policy is the risk of "physical loss or damage caused by or resulting from **earth movement**." (*Id.* at 10 of 42 (emphasis in original).)

23. The Policy defines "earth movement" in relevant part as "any natural or man-made earth movement, including but not limited to earthquake or landslide regardless of any other cause or event contributing concurrently or in any other sequence of loss." (*Id.* at 40 of 42.)

24. The Property sustained damage and loss due to rockfalls that occurred on the property on three separate occasions over a short period. The first event occurred on or about September 25, 2023 (Claim No. 824440), the second event occurred on or about November 23, 2023 (Claim No. 825527), and the third event occurred on or about December 11, 2023 (Claim No. 825557) (collectively, the "Claims").

25. Specifically, rocks and debris fell from a rock wall located on the Property, damaging, among other things, Post Bros.'s building, retaining wall, and chain link fence.

26. Post Bros. notified AFM of the losses.

27. Post Bros. sought coverage for, among other things, the cost to install a netting system on the Property, to address the deteriorating rock wall.

28. By letter dated March 13, 2024, AFM denied coverage for the netting system.

29. AFM offered the following purported explanation for its denial:

The Policy also provides, in part, the following on pages 1 and 2 of 42 of form PRO AR 4100 (01/23):

> **B. PROPERTY EXCLUDED**
>
> This Policy excludes the following except as otherwise stated in this Policy:
>
> 1. Land, water or any substance in or on land.
>
> \*\*\*
>
> The cliff behind the building is land, and land is specifically excluded by the Policy. As a consequence, to the extent the netting proposal is being presented as a cost to repair or replace the cliff, there is no coverage under the Policy for that cost.

(*See* 3/13/24 AFM Letter (attached as Exhibit "B"), at 3.)

30. AFM also denied coverage on the purported basis that the netting system would constitute a permanent installation:

> The Policy also provides, in part, the following on pages 5 and 14 of 42 of form PRO AR 4100 (01/23):
>
> **D. ADDITIONAL COVERAGES**
>
> The Additional Coverages below are subject to all the terms and conditions of this Policy including, but not limited to, the limits of liability, deductibles and exclusions shown in the Declarations section.
>
> \*\*\*
>
> **25. Protection and Preservation of Property - Property Damage**
>
> This Policy covers the reasonable and necessary costs incurred for:
>
> a) Actions to temporarily protect or preserve insured property; provided such actions are necessary due to actual, or to prevent immediately impending, insured physical loss or damage to such insured property.
>
> \*\*\*
>
> e) Temporary security for a period of time not to exceed 30 consecutive days due to actual, or to prevent immediately impending, insured physical loss or damage to such insured property.
>
> \*\*\*
>
> This coverage is subject to the deductible provisions that would have applied had the physical loss or damage happened.
>
> As outlined in the Filco proposal, the installation of the netting system on zones 1, 2 and 3 of the cliff is a permanent installation. It is neither an action intended to temporarily protect or preserve insured property at the location nor temporary security. Accordingly, the cost of the work is not within the additional coverage afforded by the Protection and Preservation of Property – Property Damage section of the Policy.

(*Id.* at 4.)

31. AFM intentionally conflated the coverage issue here. The question was not, as AFM asserts, whether the netting system would involve a "permanent" installation. The question was whether the netting system would provide permanent protection or serve as a

permanent solution.  The answer to the latter is unequivocally "no."  Accordingly, AFM's denial of coverage was improper.

32.    AFM further preemptively denied coverage for Business Interruption, Rental Income and Extra Expense insofar as such claims related to the installation of the netting system.  (*See id.* at 7.)

33.    On May 2, 2024, counsel for Post Bros. responded to AFM by letter, explaining that the work that had been performed and the further work to be performed to stabilize the rock wall and prevent it from causing further damage is covered by the Policy.  (*See* 5/2/24 Post Bros. Letter (attached as Exhibit "C").)[1]

34.    Post Bros. explained that, at best, there was an ambiguity as to the exclusion invoked by AFM, and thus coverage would be construed in favor of the insured.  (*Id.* at 4-5.)

35.    Post Bros. further disputed AFM's attempt to disclaim ADDITIONAL COVERAGES on the basis that the netting installation would be permanent.  This denial ignores the Policy language, which provides coverage for "actions to temporarily protect or preserve insured

---

[1] The attached letter is a Microsoft Word document.  Accordingly, the date automatically updated to the date it was saved for use here as an exhibit, *i.e.*, December 1, 2025.  Subsequent correspondence between the parties indicates that the original latter was dated May 2, 2024.

9

property." "Temporarily" modifies "protect," not "actions." Thus, what matters is whether the protection provided by the netting installation is temporary, not whether the installation is permanent. Indeed, an entirely new installation or solution might be needed in the future as the rock wall continues to erode.

36. In its letter, Post Bros. also clarified its business interruption claim. The letter explained that the claim is not tied to the installation of the netting system but rather relates to business interruption losses as well as extra expenses due to the damage to the building caused by the falling rocks and debris. (*Id.* at 2-3.)

37. By letter dated May 16, 2024, AFM acknowledged receipt of Post Bros.'s letter and requested additional information.

38. On May 20, 2024, counsel for AFM responded to the May 2, 2024 letter, reasserting the denial of coverage. While conceding that the rock wall is "real property" under the Policy, AFM contended only that the "land" exclusion deprives Post Bros. of coverage for any costs to repair and/or protect against the rock wall because the term "real property" is broader than "land." (*Id.* at 2.)

39. Without any basis in the Policy or citation to caselaw, AFM stated that "an office building or factory, both of which are forms of real property, constitute insured property[,]" while "land, including the cliff behind the insured's hotel,[2] is excluded property." (*Id.* at 2.)

40. AFM's interpretation does not find support in the Policy, which it drafted. Had AFM intended to limit coverage to buildings and the like, it could have done so and knew how to do it.

41. On December 9, 2024, Post Bros. submitted a Sworn Statement in Proof of Loss ("POL") in the gross amount of $8,670,754.05.

42. On December 19, 2024, AFM denied coverage on the same basis that it had previously asserted and requested additional documentation. (*See* 12/19/24 AFM Letter (attached without enclosures as Exhibit "E").)

43. At all times material hereto, Post Bros. timely responded and complied with AFM's reasonable requests for information.

---

[2] In fact, no hotel is involved here. The property involved here is a residential apartment complex.

## **COUNT I – BREACH OF CONTRACT**

44. Post Bros. incorporates by reference the averments contained in paragraphs 1 through 43 herein as fully set forth at length, verbatim.

45. The Policy constitutes a valid contract between Post Bros. and AFM.

46. Post Bros. paid the premiums required by AFM on the Policy and satisfied all of the conditions required by the Policy.

47. The Policy requires AFM to pay for the losses incurred by Post Bros. and set forth in the Claims. Those losses include the cost to temporarily stabilize the rock wall, as well as the business interruption resulting from the damage sustained by Post Bros.'s building.

48. To date, Post Bros. has incurred costs in excess of $3 million related to the first rockfall event, including costs for mitigation efforts, engineering services, and emergency scaling services.

49. By denying coverage to Post Bros., and failing to reimburse these costs, AFM breached its contractual obligations.

50. As a direct result of AFM's breach of the Policy, Post Bros. has been, and will continue to be, deprived of the benefit of the insurance coverage that it is entitled to under the Policy.

51. As a direct result of AFM's improper refusal to provide coverage to Post Bros., Post Bros. has been forced to incur, and will continue to incur, damages, including, without limitation, attorneys' fees, interest, and other expenses in connection with its covered losses.

52. As a direct and proximate result of the above-described actions of AFM, Post Bros. has been damaged in an amount to be proven at trial.

WHEREFORE, Plaintiff Post Bros. prays for relief as more fully set forth below.

## COUNT II – DECLARATORY JUDGMENT

53. Post Bros. incorporates by reference the averments contained in paragraphs 1 through 52 herein as fully set forth at length, verbatim.

54. There is a real and live dispute between the parties concerning whether, and to what extent, AFM is obligated to cover certain losses sustained by Post Bros.

55. The rock wall at issue here is real property under the Policy. Accordingly, all losses related to the rock wall—including the costs to temporarily protect against further rocks falling—are covered by the Policy.

56. AFM's assertion of the "land" exclusion is improper. The exclusion is, at best, ambiguous, and thus must be construed in favor of Post Bros.

57. Additionally, AFM's denial of coverage for the cost of installing a netting system on the basis that it is a "permanent" (rather than "temporary") installation is improper.

58. Finally, despite possessing all necessary documentation from Post Bros., AFM has improperly refused to provide coverage for Post Bros.'s Business Interruption loss.

WHEREFORE, Plaintiff Post Bros. prays for relief as more fully set forth below.

## COUNT III – Bad Faith (New Jersey Law)

59. Post Bros. incorporates by reference the averments contained in paragraphs 1 through 58 herein as fully set forth at length, verbatim.

60. AFM acted in bad faith with respect to Post Bros.'s claim because AFM: (a) lacked a reasonable basis for its denying benefits, and (b) knew or recklessly disregarded the lack of a reasonable basis for denying the claim.

61. Specifically, in order to deny Post Bros.'s claim, AFM purposefully used an overbroad interpretation of the policy's exclusion for land, knowing that this interpretation was unsupported or otherwise contrary to the plain meaning of the term, as used in the context of the Policy that AFM drafted.

62. In order to deny Post Bros.'s claim, AFM also purposefully used an improper interpretation of the policy's coverage for actions to temporary protect or preserve insured property, knowing that this interpretation was unsupported or otherwise contrary to the plain meaning of the coverage, as used in the context of the Policy. Such conduct was particularly egregious given the Policy expressly required

Post Bros. to take such action. *See* Ex. "A", Policy at § I(2) (requiring in case of loss that insured "[p]rotect the property from further loss or damage").

63. Additionally, AFM used a variety of tactics to avoid paying Post Bros. for its Business Interruption loss.

64. *First*, AFM intentionally misconstrued Post Bros.'s main claim. The claim, according to AFM, was for business losses incurred in connection with performing repairs that AFM had denied, calling them permanent. Not only was this denial erroneous and unreasonable because the referenced repairs were temporary (and thus separately covered), but it also misstated the claim itself. As Post Bros. has explained, the Business Interruption loss is based on damages caused by the rockfall—an undisputedly covered event—and unrelated to the efforts to protect against further loss from rockfalls in the future.

65. *Second*, AFM has received all necessary, requested documentation from Post Bros. to support its Business Interruption loss. Insofar as AFM continues to ask for additional documentation, such requests are solely for the purpose of unreasonably delaying payment.

16

WHEREFORE, Plaintiff Post Bros. prays for relief as more fully set forth below.

## ALTERNATIVE COUNT IV – Bad Faith (Pennsylvania Law)

66.     Post Bros. incorporates by reference the averments contained in paragraphs 1 through 65 herein as fully set forth at length, verbatim.

67.     The aforementioned conduct of AFM is in bad faith and in violation of the Pennsylvania Bad Faith Statute, 42 Pa. C.S. § 8371.

68.     As a result of the bad faith conduct of AFM, Post Bros. is entitled to damages recoverable under 42 Pa. C.S. §8371.

WHEREFORE, Plaintiff Post Bros. prays for relief as more fully set forth below.

## PRAYER FOR RELIEF

Against the foregoing, Post Bros. hereby demands judgment in its favor and against AFM for the following:

(i)     compensatory, consequential, and incidental damages in an amount to be determined at trial;

(ii) an order in the form of declaratory relief declaring that AFM has a duty to cover, in full, the losses sustained by Post Bros. as set forth in the Proofs of Loss;

(iii) interest;

(iv) punitive damages against AFM;

(v) Post Bros.'s attorneys' fees and costs; and

(vi) all such other relief as this Court deems just and proper.

Respectfully submitted,

Dated: December 12, 2025   /s/ Benjamin A. Garber
Benjamin A. Garber
Edward T. Butkovitz
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: 215-568-2000 | Fax: 215-568-0140
Eml: bgarber@kleinbard.com
ebutkovitz@kleinbard.com

*Attorneys for Plaintiff*
*Post Brothers Holdings, LLC*